IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BLACKJEWEL L.L.C., et al.,

        Debtors

CARDINAL RECLAMATION COMPANY, LLC,

        Plaintiff

LEXON INSURANCE COMPNAY,

        Intervener-Plaintiff,

*v.*                               CIVIL ACTION NO.    3:23-0439
                                 BANKRUPTCY CASE NO. 3:19-30289

BLACKJEWEL, L.L.C;
REVELATION ENERGY, LLC;
HAROLD KEEN COAL CO., LLC;
RHINO ENERGY, LLC;
JEWEL VALLEY MINING, LLC;
MOUNTAINEER METALLURGICAL HOLDINGS, LLC;
KOPPER GLO MINING, LLC; and
NALLY & HAMILTON ENTERPRISES, INC.,

        Defendants.

**MEMORANDUM OPINION & ORDER**

      Cardinal Reclamation Company, LLC and Rhino Energy, LLC dispute who owns four mining permits that come with reclamation obligations. After a two-day bench trial, the Bankruptcy Court concluded Cardinal holds these permits. This Court agrees.

## BACKGROUND

In 2019, Blackjewel, LLC and ten other entities[1] (collectively "Defendants") declared bankruptcy. *See* Notice of Appeal, Ex. A (Findings of Fact & Conclusions of Law) at 9, ECF No. 1. Defendants divided their assets into "lots"—including the "Western Assets" and the "Virginia Subdivision Assets." *Id.* After receiving bids and conducting a sale hearing, the Bankruptcy Court determined Rhino held the highest bid for the Virginia Subdivision Assets and Contura Energy, Inc. held the highest bid for the Western Assets. *See id.* at 9–10.

The transfer of the Virginia Subdivision Assets went smoothly. Defendants and Rhino executed an agreement to transfer the Virginia Subdivision Assets ("the Rhino Sale Agreement"). *See id.* at 10. Under the agreement, Jewell Valley—a subsidiary of Rhino—acquired:

1) eleven permits associated with the Virginia Subdivision Assets ("enumerated permits");[2]

2) all government permits "necessary and desirable for the operation" of the enumerated permits "as such operation would be operated by an experienced and prudent operator;" and

3) any real property, improvement, leases, equipment, parts, and inventory within the Virginia Subdivision "whether or not contained within, on[,] or under" the Rhino Sale Agreement.

---

[1] Blackjewel Holdings LLC; Revelation Energy Holdings, LLC; Revelation Management Corporation; Revelation Energy, LLC; Dominion Coal Corporation; Harold Keene Coal Co. LLC; Vansant Coal Corporation; Lone Mountain Processing, LLC; Powell Mountain Energy, LLC; and Cumberland River Coal LLC. *See id.* at 4 n.6. The Bankruptcy Court converted the Cumberland River Coal, LLC and Powell Mountain Energy Chapter 11 proceedings into Chapter 7 proceedings. *See id.*

[2] These permits are Permit #1201797 (D-15 – Pioneer #1); Permit #1202258 (D-16 Mavrick – Dominion #30); Permit #Y-4015-97 (D-16 Mavrick – Dominion #30 Shadow Permit); Permit #1702261 (D-17 Tiller #4 – Surface Mine #1); Permit #1202259 (D-18 Tiller #5 – Dominion Mine #7); Permit #Y-3032-12 (D-18 Tiller #5 – Dominion Mine #7 Shadow Permit); Permit #Pending Transfer (D-18 – Dominion 7 Shadow Permit); Permit #1202286 (D-20 Beehive – Dominion Mine #34); Permit #1702276 (P-12 Flatrock – Flatrock Plant & Refuse); Permit #1102084 (R251 – Flatrock Northeast); and Permit #1302005 (T-12 Raven Loadout – Raven Dock). *See* August 23, 2019 Order Approving the Sale of Certain Assets to Rhino Energy LLC, Ex. A (Purchased Assets), ECF No. 8-4.

Findings of Fact & Conclusions of Law at 10–11. Jewell Valley did "not assume any reclamation obligations" for permits "not identified" in the Rhino Sale Agreement. *Id.* at 12 (quotation omitted). The Commonwealth of Virginia and the State of West Virginia approved the transfer. *See id.* at 10, 12–13.

The transfer of the Western Assets proved rockier. Defendants and Contura could not reach an agreement. *See id.* at 13. As a result, the Bankruptcy Court approved a private sale of the Western Assets to Eagle Specialty Materials, LLC. *See id.* Through the sale, Eagle acquired $90,000,000 and "the mining permits, all owned and leased real property, accounts receivable[,] and equipment" related to coal mines in Wyoming held by Defendants. *Id.* (quotation omitted).

An affiliate of Eagle—Cardinal—then acquired twenty-one "specific permits" in the Virginia Subdivision ("Eastern Permits"). *Id.* at 14. These came with reclamation obligations. *See id.* Cardinal did not acquire any real property, accounts receivable, or equipment located within the Virginia Subdivision. *See id.* at 14, 16. It acquired "only the mining permits." *Id.* at 16.

Cardinal sued. In its complaint, Cardinal sought an order declaring Rhino and Jewell Valley responsible for the reclamation obligations of four Eastern Permits: Permit #1102135 (Jones Fork #3); Permit #1102136 (Jones Fork #4); Permit #1201540 (Dominion #26); and Permit #1201919 (Hatfield #252) (collectively "Disputed Permits"). *See* R.21 (Amended Complaint) at 31.[3]

After trial, the Bankruptcy Court issued Findings of Fact & Conclusions of Law. *See generally* Findings of Fact & Conclusions of Law. Reviewing the Rhino Sale Agreement, the Bankruptcy Court determined Rhino (and Jewell Valley) acquired the disputed permits only if they

---

[3] Cardinal also sought relief under Fed. R. Civ. P. 60. *Id.* ¶¶ 99–101. The Bankruptcy Court denied this request. *See* Findings of Fact & Conclusions of Law at 34–53. Cardinal does not appeal this denial. *See* Appellant Reply at 1, ECF No. 25.

were "necessary" for the operation of one of the enumerated permits in the Rhino Sale Agreement and "desirable" to an experienced and prudent operator of a mine. *See id.* at 26.

Applying this test, the Bankruptcy Court then considered each Disputed Permit. *See id.* at 29–34. As to necessity, the Bankruptcy Court held each Disputed Permit was not necessary to conduct mining operations in the Virginia Subdivision because the Virginia Department of Energy approved the transfer of the enumerated permits to Jewell Valley "without requiring Rhino and/or Jewell Valley to apply" for the Disputed Permits. *Id.* at 27. "Even if that fact alone were insufficient to defeat Cardinal's claims," the Bankruptcy Court remarked, Cardinal failed to provide "sufficient evidence" showing Rhino was "required" to secure the Disputed Permits before operating. *Id.* As to desirability, the Bankruptcy Court held Cardinal failed to prove the Disputed Permits would be "desirable" to a mine operator "taking into account the associated reclamation obligations of the additional permit." *Id.* at 28. In short, Cardinal—not Rhino—held the Disputed Permits and their reclamation obligations. *See id.* at 53.

Cardinal appealed. Cardinal challenges the Bankruptcy Court's conclusions regarding the Jones Fork #3, Jones Fork #4, and Hatfield #252 permits. *See* Appellant Reply at 2.

**STANDARD OF REVIEW**

Findings of fact are reviewed for clear error. *See In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003). Conclusions of law are reviewed *de novo*. *See id*.

If a bankruptcy court's order contains "ambiguity or obscurity," the bankruptcy' court's interpretation of its own order receives "substantial deference." *In re Tomlin*, 105 F.3d 933, 940–41 (4th Cir. 1997) ("The bankruptcy court was 'in the best position to interpret its own orders.'").

A district court can "affirm, modify, or reverse a bankruptcy judge's judgment, order" or "decree or remand with instructions for further proceedings." *Williams v. Colonial Penniman, LLC*, 582 B.R. 391, 396 (E.D. Va. 2018).

## ANALYSIS

### I

Cardinal and Rhino debate who owns the Disputed Permits. To resolve this debate, the Court looks to the Rhino Sale Agreement. Under this agreement, Defendants agreed to transfer the "Purchased Assets described in Exhibit A" "free and clear of all liens, claims, interests, and encumbrances" to Rhino. R.5.A (Rhino Sale Order), at 48, ECF No. 8-4. Exhibit A to the agreement lists eleven permits by Job/Job Name and Permit, *see id.*, and explains these "Purchased Assets" include all governmental permits "necessary and desirable for the operations of such Job/Job Name and Permit as such operation would be operated by an experienced and prudent operator and which are held by [Defendants] with respect to such Job/Job Name and Permit." *Id.*

Relevant here, the Rhino Sale Agreement requires a government permit meet two conditions before Rhino acquires it. *First*, the government permit must be "necessary" to operate one of the enumerated "Job/Job Name and Permit[s]" listed in Exhibit A. *Id. Second*, the government permit must be "desirable" to operate one of the enumerated "Job/Job Name and Permit[s]" listed in Exhibit A. *Id.* Both conditions must be satisfied. That is, Cardinal must show each Disputed Permit is necessary *and* desirable for Rhino to acquire the permit. The Rhino Sale Agreement, however, does not define either term. As such, they carry their "natural and ordinary meaning." *Bennet v. Dove*, 277 S.E.2d 617, 619 (W. Va. 1981). Consider each in turn.

### A

Begin with "necessary." The Bankruptcy Court held a Disputed Permit is "necessary" if

-5-

Virginia law requires Rhino to hold the Disputed Permit to operate an enumerated permit. *See* Findings of Fact & Conclusion of Law at 27.

This Court agrees. Black's Law Dictionary defines "necessary" as "needed for some purpose or reason," "essential," "must exist or happen and cannot be avoided," and "inevitable." Black's Law Dictionary 1241 (11th ed. 2019). Other sources agree. *See, e.g.*, Random House College Dictionary 884 (2000) (defining "necessary" as "essential, indispensable, or requisite"); 10 Oxford English Dictionary 275–76 (2d ed. 1989) (defining necessary as "[i]ndispensable, requisite, essential, needful; that cannot be done without" and "absolutely required"). It is a "word[] of limitation." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 327 (4th Cir. 2004).

Cardinal does not contest this definition. Instead, it argues the Disputed Permits are "necessary" to operate the enumerated permits because Virginia law requires a permit for reclamation. *See* Appellant Br. at 18–20. Sure enough. No person "shall engage in or carry out any coal surface mining operation without having first obtained a permit to engage in such operation." Va. Code Ann. § 45.2-1009(A). *See Sierra Club v. Kempthorne*, 589 F. Supp. 2d 720, 728 (W.D. Va. 2008) (same). Yet this truism misses the point.

For a transfer to occur, the Director of the Virginia Department of Energy must conclude the transferee's operation plan satisfies all reclamation obligations under state and federal law. *See* 4 Va. Admin. Code §§ 25-130-774.17(d)(1); 25-130-773.15(c)(2) ("The applicant has demonstrated that reclamation as required by the Act and this chapter can be accomplished under the reclamation plan contained in the permit application."). Absent contrary evidence, this Court presumes the Director made this finding. *See Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012) (describing the "presumption of regularity" afforded to "official acts of public officers" under which "courts presume [] they have properly discharged their official duties" absent "clear

evidence to the contrary") (quotation omitted); *Ohio Valley Env'tl Coalition v. Coal-Mac*, 775 F. Supp. 2d 900, 921 (S.D. W. Va. 2011) (Chambers, J.) (explaining federal courts usually defer to the "state's authority over implementation of [a] permitting process"—including refusing to "sit[] in review of a state-issued permit") (quotation omitted). The Director's approval of the transfer of the eleven enumerated permits to Rhino, therefore, means the Commonwealth of Virginia decided Rhino's reclamation obligations could be met with only the enumerated permits. Rhino did not need the Disputed Permits for reclamation. This determination by state regulatory authority proves "fatal" to Cardinal's argument. Findings of Fact & Conclusions of Law at 27.[4]

Cardinal presses on. Notwithstanding the Commonwealth of Virginia's transfer decision, Cardinal argues the Disputed Permits are physically required to operate the enumerated permits. *See* Appellant Br. at 19–26. Without the Disputed Permits, Cardinal argues, Rhino cannot operate the enumerated permits like Blackjewel did. *See id.*

Cardinal misunderstands the weight its evidence bears. Cardinal demonstrated how Blackjewel operated the enumerated permits before its bankruptcy. For instance, Cardinal suggested Blackjewel ran water from the JV-17 mine—an enumerated permit—to water pumps and settling ponds by passing under Jones Fork #4—a Disputed Permit. *See, e.g.*, Trial Tr. vol. 1 at 102, ECF No. 6. *See also* Appellant Br. at 19–24 (discussing how the JV-17 mine, Jones Fork #3, and Jones Fork #4 are "connected"). Similarly, Cardinal suggested Blackjewel ran a coal conveyor belt from the Flat Rock Plant—an enumerated permit—to Hatfield #252—a Disputed Permit. *See* Trial Tr. vol. 1 at 149. *See also* Appellant Br. Brief at 24–26 (explaining how the Hatfield #252 "has always been utilized in operating the Flat Rock Plant").

---

[4] Of course, if the Commonwealth of Virginia believes the Disputed Permits are now necessary, it "may require reasonable revision or modification" of Rhino's permits. Va. Code Ann. § 45.2-1012(B). *See also* Va. Code Ann. § 45.2-1025 (detailing administrative procedures to modify, vacate, or terminate a permit).

This evidence speaks to how Blackjewel—a previous operator—ran the JV-17 mine and the Flat Rock Plant. It does not speak to whether Rhino must copy this behavior. Yes—the past is often prologue. But it is not destiny. Indeed, Rhino suggested it might deviate from Blackjewel's operating practices. *See, e.g.*, Trial Tr. vol. 1 at 165 (discussing how Rhino could access the settlement ponds without using Jones Fork #4 by using roads controlled by a surety company and gas company); Trial Tr. vol. 2 at 145–47 (discussing plans by Rhino to reconfigure the coal conveyor belt currently touching the Flat Rock Plant permit and the Hatfield #252 permit). These suggestions undermine the implication that the past dictates the present and commands the future.

The Bankruptcy Court recognized this disconnect. As to the JV-17 mine, the Bankruptcy Court found Cardinal showed it would be "convenient" to use the Jones Fork #3 and Jones Fork #4 permits to "service some sediment ponds or settling ponds" located near the JV-17 mine. Findings of Fact & Conclusions of Law at 30. But convenience is not necessity. As such, the Bankruptcy Court held Cardinal did not show the waterline crossing under the road on Jones Fork #4 "necessitates" an operator to acquire the Jones Fork #3 or the Jones Fork #4 permit. *Id.* Reviewing the record, this Court agrees.

As to Hatfield #252, the Bankruptcy Court found Cardinal failed to show this Disputed Permit was required to operate the Flat Rock Plant. *See* Findings of Fact & Conclusions of Law at 33. The Bankruptcy Court relied on Rhino's suggestion the Flat Rock Plant could be reconfigured to operate the coal conveyor belt entirely within the Flat Rock Plant permit area. *See* Trial Tr. vol. 2 at 145–47; Appellant Br. at 25 (recognizing this testimony). The Bankruptcy Court acknowledged Chris Slone—former Vice President of Operations at Jewell Valley—explained that reconfiguring the coal conveyor belt might constrict production. *See* Findings of Fact & Conclusions of Law at 33–34. Nevertheless, the Bankruptcy Court found Cardinal failed to

demonstrate these additional expenses "exceed" the cost of the reclamation obligations associated with the Hatfield #252 permit. *Id.* at 34. Reviewing the record, this Court agrees.

In short, Cardinal bore the burden to prove the Disputed Permits were necessary to operate the enumerated permits. The Bankruptcy Court held Cardinal failed to do so. This Court agrees.

**B**

Turning to "desirable," the Bankruptcy Court held an experienced and prudent operator would find a Disputed Permit "desirable" if the reclamation costs "incidental" to acquiring a Disputed Permit would not "exceed" any "operational savings connected to the acquisition" of the permit. *Id.* at 28. Convenience is not enough. *See id.*

This Court agrees with this definition. Something "desirable" is "worth seeking" and "pleasing." The American Heritage Dictionary 386 (2d. ed. 1982). The SMCRA and its state counterparts "force[] coal companies to internalize some of the environmental costs of surface mining by requiring a financial guarantee they will reclaim degraded land." Joshua Macey & Jackson Salovaara, *Bankruptcy as Bailout: Coal Company Insolvency and the Erosion of Federal Law*, 71 Stan. L. Rev. 879, 896 (2019). Reclamation is costly and time-consuming. Not every mine operator wants to accept these obligations. A desirable permit, therefore, is one in which the benefits afforded by the permit outweigh the reclamation obligations required under the permit.

The Bankruptcy Court held Cardinal did not show an experienced and prudent mine operator would want the Jones Fork #3 or Jones Fork #4 permits considering their reclamation obligations. *See* Findings of Fact & Conclusions of Law at 30–31. Instead, Cardinal demonstrated only that it was "convenient" for a prior operator of the JV-17 mine to use both permits. Desirable permits may be convenient. But convenient permits are not automatically desirable. Similarly, the Bankruptcy Court held Cardinal did not show an experienced and prudent mine operator would

-9-

want the Hatfield #252 permits considering their reclamation obligations. *See* Findings of Fact & Conclusions of Law at 33–34. To be sure, Cardinal suggested Rhino's plan to reconfigure the coal conveyor belt to fit entirely within the Flat Rock Plant would "constrict production." *Id.* at 34. This evidence certainly shows the Hatfield #252 carries benefits. Yet this evidence only speaks to half of the equation. Cardinal needed to provide evidence showing whatever benefits the Hatfield #252 permit carried, those benefits outweighed its burdens. The Bankruptcy Court found Cardinal failed to present "any evidence" resolving this balancing inquiry. *Id.* Upon review, this Court agrees.

\* \* \*

In sum, this Court finds no error in the Bankruptcy Court's interpretation of the Rhino Sale Agreement or its application to the facts presented at trial.

II

Unlucky on the merits, Cardinal attacks the authority of the Bankruptcy Court to authorize a legal transfer of a mining permit absent state approval. *See* Appellant Brief at 18–19, Reply Brief at 2–3. Cardinal misreads the Bankruptcy Court's use of the term "transfer."

The Bankruptcy Court used "transfer" in a "nontechnical" manner to signify a conveyance of interest. *In re Kimmel's Coal & Packaging, Inc.*, 2021 WL 5769319, at \*2 (M.D. Pa. Dec. 3, 2021). In other words, the Rhino Sale Order awarded Rhino and Jewell Valley the "ability to seek and obtain permission to conduct mining activities" including the "obligation to assume the existing reclamation liability once it obtained a permit." *Id.* at \*4. The Bankruptcy Court did not usurp the state's duties under 4 Va. Admin. Code § 25-130-774.17 *et seq*.

The procedural history of this case confirms this reading. Virginia approved the transfer of the enumerated permits after the Bankruptcy Court issued the Rhino Sale Order. *See* Findings of Fact & Conclusions of Law at 12–13. Indeed, the Bankruptcy Court required Rhino to share an

update about the state's transfer decision a year after it entered the Rhino Sale Order. *See id.* at 10, 12. If the enumerated permits were already legally transferred, the state's approval and the Bankruptcy Court's request for information would have been superfluous.

## CONCLUSION

The coal industry continues to decline. In its wake, coal companies increasingly use bankruptcy to evade reclamation obligations—raising the prospect the environment may never fully recover. *See* Macey & Salovaara, *Bankruptcy as Bailout* at 917, 925–27, 931–32. This case is no exception. The Court takes seriously Cardinal's suggestion Defendants orchestrated a deal to separate the lucrative components of the JV-17 mine and the Flat Rock Plant from their reclamation obligations. *See* Appellant Br. at 22 (lamenting "gamesmanship by operators in the coal industry"). The Court emphasizes nothing in this opinion should be taken to condone or excuse any party of their liability under applicable law. The Virginia Department of Energy and other regulatory authorities may seek appropriate relief against any party for their conduct on the Disputed Permits notwithstanding this litigation. With these admonitions, the Court **AFFIRMS** the Bankruptcy Court's Findings of Fact & Conclusions of Law. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     December 21, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE